IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 1:13CR-063 |
| Plaintiff, | : | INDICTMENT  J. DLOTT |
| | : | 18 U.S.C. § 545 |
| v. | : | 18 U.S.C. § 1347 |
| | : | 18 U.S.C. § 1349 |
| PETER TSAI, | : | 18 U.S.C. § 1956(a)(2)(A) |
| RUEY TSAI, | : | Forfeiture Allegation |
| TAHSIUNG TSAI, and | : | |
| WEI LIH SHEIH (a/k/a "Wendy"), | : | |
| | : | |
| Defendants. | : | |

THE GRAND JURY CHARGES THAT:

COUNT ONE
18 U.S.C. § 1349

1. At all times relevant to this Indictment, Defendants **PETER TSAI** was a resident of the Southern District of Ohio, specifically Coal Grove, Ohio.

2. Defendant **PETER TSAI** owned and operated the Advanced Family Medical Center ("AFM"), located in the Southern District of Ohio.

3. At all times relevant, Defendants **RUEY TSAI** and **TAHSIUNG TSAI**, who are the parents of **PETER TSAI**, were also residents of Coal Grove, Ohio.

4. Defendant **RUEY TSAI** owned and operated Watkins-Tsai Imaging, which is located in the Southern District of Ohio.

5. Defendant **TAHSIUNG TSAI** was the medical director of Watkins-Tsai Imaging.

6. Defendant **WEI LIH SHEIH (a/k/a "Wendy")** is a cousin of **PETER TSAI** and, at all times relevant, worked for AFM and Watkins-Tsai Imaging. Her duties included billing for medical services for the companies.

7. Both AFM and Watkins-Tsai Imaging operated out of the same building in Coal Grove, Ohio.

8. Defendant **PETER TSAI** was the original owner of Watkins-Tsai Imaging, then he transferred ownership to his mother, **RUEY TSAI**.

9. A large percentage of the patients at **PETER TSAI's** medical practice at AFM received CT scans at the adjoining Watkins-Tsai Imaging Center.

10. Even after ownership of Watkins-Tsai Imaging was transferred to **RUEY TSAI's** name, **PETER TSAI** continued to receive compensation from Watkins-Tsai Imaging.

11. Beginning at an exact date unknown, but at least approximately in or about 2004, and continuing through the present, within the Southern District of Ohio and elsewhere, Defendants **PETER TSAI, RUEY TSAI, TAHSIUNG TSAI, and WEI LIH SHEIH** (**"the Defendants"**) knowingly and willfully combined, conspired, and agreed with others, whose identities are both known and unknown to the Grand Jury, to commit offenses against the United States, specifically health care fraud.

12. In furtherance of their conspiracy, **the Defendants** and their coconspirators knowingly and willfully executed a scheme or artifice to defraud a health care benefit program and obtained money or property owned or controlled by a health benefit program by means of false or fraudulent pretenses, all in connection with the delivery of and payment for health care benefits, items, or services in violation of Title 18, United States Code, Section 1347.

## OBJECT OF THE CONSPIRACY

13. The object of the conspiracy was for **the Defendants** to fraudulently obtain money and funds from medical benefit plans, including Medicare, Medicaid and Tri-Care, through the billing and performance of excessive CT scans and CT scans that were never performed.

## MANNER AND MEANS

14. The Defendants executed their conspiracy and scheme to defraud through the following manner and means:

    a. The Defendants performed diagnostic CT scans that were medically unnecessary, including multiple scans of the same body part for the same patient weeks apart.

    b. The Defendants performed and billed for CT scans for medically unnecessary injections of Synvisc in knees, including the injection of this osteoarthritis product into young adults without any proper diagnosis of osteoarthritis;

    c. The Defendants performed and billed for CT scans related to medically unnecessary injections for purported piriformis syndrome. Once Dr. Tsai learned of piriformis injections in or about April 2008, the number of piriformis injections and related CT scans given by Dr. Tsai rose dramatically;

    d. The Defendants ignored and/or stopped documenting statements and complaints from patients that the piriformis injections were not working or were not wanted;

    e. In relation to the Synvisc and piriformis injections, the Defendants fraudulently billed for CT scans, office visits, and "abcess drainage under xrays" that were not performed. They also used billing codes and modifiers that did not apply to maximize revenue; and

f. The Defendants would also bill for 3D CT scans that were not medically necessary;

g. To maximize profits, the Defendants purchased Synvisc from other countries with packaging that is not approved or labeled for use in the United States. The Defendants then illegally distributed the products to their own patient population through injections, and fraudulently billed the medical benefit programs as if the product was legally purchased in the United States.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
## 18 U. S.C. § 1347

15. The Grand Jury realleges and incorporates by reference Paragraphs 1-14 of the Indictment as though set forth in full herein.

16. On or about the July 27 and 28, 2009, in the Southern District of Ohio, the defendants **PETER TSAI, RUEY TSAI, TAHSIUNG TSAI, and WEI LIH SHEIH**, knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud, obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare and Medicaid, health care benefit programs as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of, billing, and payment for health care benefits, items, and services for PATIENT 1, whose identity is known to the grand jury.

All in violation of Title 18, United States Code, Section 1347.

## COUNT THREE
## 18 U.S.C. § 545

17. The Grand Jury restates and incorporates paragraphs 1 through 14 as if fully restated herein.

18. From approximately September 2006 through at least January 2010, Defendant **PETER TSAI** purchased Synvisc product that was not intended or labeled for distribution in the United States. The product was actually intended and labeled for distribution in other countries, such as Canada and Turkey.

19. The Synvisc product labeled for distribution in Canada and Turkey is consider adulterated and misbranded when used in the United States, pursuant to 21 U.S.C. § 351 and 352, as well as 21 C.F.R. part 814.

20. Defendant **PETER TSAI** imported and used this adulterated and misbranded Synvisc so that he would generate more profit from his billing of the device to insurers, including Medicare and Medicaid.

21. **PETER TSAI** fraudulently and knowingly imported and brought into the United States merchandise contrary to law.

22. **PETER TSAI** also received, bought, and facilitated the transportation, concealment or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

All in violation of 18 United States Code, Section 545.

## COUNT FOUR
## 18 U.S.C. § 1956

23. The Grand Jury realleges and incorporates by reference Paragraphs 1-22 of the Indictment as though set forth in full herein.

24. On or about July 10, 2009, in the Southern District of Ohio, and elsewhere, **Defendant PETER TSAI** did transfer and attempt to transfer funds in the amount of $5,695 from a place in the United States, that is AFM's bank account at First Priority Federal Credit Union, to a place outside the United States, that is TD Bank in Toronto, Canada for the purchase of Synvisc, with the intent to promote the carrying on of specified unlawful activity, namely the health care fraud in Count 1 and illegal import of merchandise in Count 2.

All in violation of Title 18, United States Code, Section 1956(a)(2)(A).

## FORFEITURE ALLEGATION 1

Upon conviction of one or more of the offense alleged in Count 1 (conspiracy to commit health care fraud) of this Indictment, defendants **PETER TSAI, RUEY TSAI, TAHSIUNG TSAI**, and **WEI LIH SHEIH** shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, representing the amount of proceeds obtained as a result of the offense, 18 U.S.C.§ 1349, conspiracy to commit health care fraud.

All in accordance with 18 U.S.C. § 982(a)(7), and Rule 32.2(a), Federal Rules of Criminal Procedure.

## FORFEITURE
## SUBSTITUTE ASSETS

If any of the property described above in Forfeiture Allegation 1, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

All pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c).

A TRUE BILL.

S/
_____
Grand Jury Foreperson

**CARTER M. STEWART**
United States Attorney

_____
**ANTHONY SPRINGER**
Cincinnati Branch Chief