# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

              Plaintiff,    :    Case No. 1:13-cr-063
                                        Also 1:17-cv-581

                                        District Judge Susan J. Dlott
   - vs -                               Magistrate Judge Michael R. Merz

PETER TSAI,

              Defendant.    :

---

## DECISION AND ORDER

---

This is an action on Defendant's Motion to Vacate under 28 U.S.C. § 2255, pending on Defendant's Objections ECF No. 146) to the Magistrate Judge's Report and Recommendations (ECF No. 145), Defendant's Motion for Certificate of Appealability (ECF No. 147), and the Government's Response (ECF No. 150).

In light of the parties' submissions, the Court finds a recommittal to the Magistrate Judge is unwarranted and the Order to that effect (ECF No. 148) is VACATED.

Under Fed. R. Civ. P. 72(b)(3), the Court reviews *de novo* a Magistrate Judge's report and recommendations on a prisoner petition, which includes motions to vacate under 28 U.S.C. § 2255.

1

**Procedural History**

Defendant was indicted June 19, 2013, on four counts for violations of 18 U.S.C. §§ 1349, 1347, 545, and 1956 (Indictment, ECF No. 1). On August 8, 2014, after three days of trial but before the Government had rested its case, Tsai entered into a plea agreement with the United States which provided in pertinent part that he would plead guilty to conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 and illegal importation of merchandise in violation of 18 U.S.C. § 545 (ECF No. 63). After receiving and reviewing a presentence investigation report ("PSR"). the Court sentenced Tsai to 78 months imprisonment on each of Counts One and Three with the time to be served concurrently. Defendant appealed and the Sixth Circuit affirmed both the conviction and sentence. *United States v. Tsai*, No. 15-3655, 651 Fed. Appx. 380 (6th Cir. June 7, 2016). Tsai filed the instant Motion September 4, 2017.

Tsai pleads one ground for relief, to wit, that his guilty plea was not knowing and voluntary due to ineffective assistance of trial counsel (Motion, ECF No. 134, PageID 1495.) The Motion is supported by a lengthy Memorandum (ECF No. 135, PageID 1504-1528) that begins with a statement of factual background citing trial testimony *Id.* at PageID 1505-1511. The Memorandum then relies on the attached Affidavit of Peter Tsai (ECF No. 135-1, PageID 1529-1536), which details the ways in which Tsai believes Kevin Conners, his retained defense counsel, was deficient in preparing for trial in failing to be prepared to effectively cross-examine the Government's witnesses, in not retaining expert witnesses for the defense, in not subpoenaing patients to testify in his behalf, and in a number of other ways.

Tsai avers that at the end of the third day of trial, Conners told him the case was not winnable (Tsai Affidavit, ECF No. 135-1, ¶ 8, PageID 1530). He further avers, "I decided to plead guilty because I realized Mr. Conners was not prepared to defend me at trial." *Id.* at ¶ 10. The balance of the Affidavit details the ways in which Tsai believes Conners was unprepared.: (1) failure to consult experts to rebut the reports of Government experts Drs. Terry Torbeck and Human Akbik (ECF No. 135, PageID 1516); (2) failure to consult a radiology expert and an expert on piriformis syndrome *id.;* (3) failure to subpoena patient witnesses to trial, *id.* at PageID 1520; and (4) failure to interview Government witnesses *id.* at PageID 1523. As to the second or prejudice prong of *Strickland v. Washington,* 466 U.S. 668 (1984), Tsai asserts he would have insisted on completing the trial if Conners had been prepared. *Id.* at PageID 1526.

The Answer notes what is confirmed by the docket: Tsai was sentenced ten months after the plea and never sought to withdraw his plea, change counsel, or otherwise represent that he had received ineffective assistance of trial counsel. Nor did he make any such claim at sentencing. Represented by new counsel on appeal,[1] Tsai sought reversal on a claim that the Court had violated Fed. R. Crim. P. 11 in encouraging him to plead guilty. Significantly, Tsai claimed the Court's statement at the end of the third day of trial "coerced [him] into an involuntary plea that he otherwise would not have entered."

> But for the district court's violation of Rule 11, Tsai would not have entered a guilty plea because he was on the third day of trial. The fact that he pleaded guilty immediately after the judge made her improper comments demonstrates that he would not have plead [sic] guilty but for the judge's remarks.

(Brief of Appellant, 6th Cir. Case No. 15-3655, ECF No. 18, pp. 18-19). Nowhere in his Brief does he assert there was any other cause for his guilty plea. In particular, he makes no claim that

---

[1] Candace Crouse, the same attorney who represents him in these proceedings.

any of his attorney's conduct or omissions had anything to do with his decision. Failure to make this claim to the Court of Appeals does not legally bar him from raising it now[2], but factually the claims are inconsistent.

The Answer then recounts at length the Government's theories for trial and what the Government knows about Mr. Conners' preparation (ECF No. 141, PageID 1712-14). This argument includes response to the Affidavit of Loren Fishman, M. D., filed by Tsai in support of his Motion to Vacate (ECF No. 137-1). The Government concludes by arguing that Tsai can show no prejudice from anything Conners did or did not do as to Count One because he separately pleaded guilty to Count Three, the smuggling charge, and does not aver any basis for setting that conviction aside (Answer, ECF No. 141, PageID 1735).[3]

The governing standard for ineffective assistance of counsel is found in *Strickland, supra*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the

---

[2] The appellate courts prefer that ineffective assistance of trial counsel claims be brought under § 2255. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006). Procedural default doctrine does not bar the 2255 motion even if the issue could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500 (2003); *United States v. Neuhausser*, 241 F.3d 460 (6th Cir. 2001); *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999).

[3] The heading of this section of the Answer says "Consecutive Sentences," but the mistake is corrected in the first sentence of text.

4

> conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

> With respect to the first prong of the *Strickland* test, the Supreme Court has commanded: Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

> As to the second prong, the Supreme Court held:

> > The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright,* 477 U.S. 168, 184 (1986), *citing Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra; Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987)(*quoting Strickland,* 466 U.S. at 687: "The likelihood of a different result must be substantial, not just conceivable."); *Storey v. Vasbinder,* 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter,* 562 U.S. 86, 111-12 (2011).

> > In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the

outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id.*, at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

The *Strickland* standard applies in evaluating ineffective assistance claims in cases that resulted in a negotiated plea. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to satisfy the "prejudice" prong of *Strickland* in a negotiated plea case, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no contest and would have insisted on going to trial. *Hill*, 474 U.S. at 58. Moreover, he must show that there would have been a reasonable chance he would have been acquitted had he gone to trial. *Id.* at 59.

In the Motion, the Reply, and the Objections, Tsai requests an evidentiary hearing, although he never suggests who would be called as witnesses except himself and his proposed expert, Loren Fishman. The Magistrate Judge agreed a two-to-three week evidentiary hearing would be needed to determine the facts related to the deficiency prong of *Strickland* (Report, ECF No. 145, PageID 1813). He wrote:

> Because of the nature of Tsai's claims, such a hearing would amount to re-trying the case on a hypothetical basis, . . .

6

> Both the performance and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact. *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007); *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000). To make the requisite findings of fact, a court must take evidence. However, there is no admissible evidence before the Court at this time except the trial testimony. The Federal Rules of Evidence apply to § 2255 proceedings. Fed. R. Evid. 1101. Everything Defendant has submitted to support his case is uncross-examined hearsay or unauthenticated documents. Because Tsai and Dr. Fishman purport to offer expert medical testimony, it would probably be necessary to conduct hearings under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to determine admissibility. Once those witnesses and any uncalled lay witnesses had been heard, the Government would be entitled to present the two days of testimony it did not present at trial. This is because the test of the likely outcome of trial and whether a defendant would rationally have rejected a plea bargain and continued with trial is an objective test.

*Id.* at PageID 1813-14.

Tsai raises no objection at all to this portion of the Report, stating only "[t]he Magistrate Judge correctly agreed with Tsai that an evidentiary hearing would be required to determine . . . .deficient performance."

The Report concluded a ruling on the deficient performance prong was not needed because Tsai could not satisfy the prejudice prong of *Strickland* (Report, ECF No. 145, PageID 1814-16). The Magistrate Judge accepted the Government's argument that because Tsai had pleaded guilty to both Counts 1 and 3 and did not attack the conviction on Count 3[4], his concurrent sentences on the two counts obviated any prejudice.

---

[4] The Magistrate Judge wrote "He does not accuse Mr. Conners of ineffective assistance of trial counsel on that Count, nor suggest any evidence that could have been offered or witnesses called to prevent conviction on that Count. Physical evidence of illegal importation of Synovisc was found in his practice offices when they were searched pursuant to warrant and it is uncontested that he used a great deal of this medication in his practice." (Report, ECF No.145, PageID 1815).

7

The Government's concurrent sentence argument relied on *Dale v. Haeberlin*, 878 F.2d 930, fn. 3 (6th Cir. 1989)), and the Magistrate Judge noted "[i]n his Reply, Tsai makes no response to this argument . . ." Tsai takes issue with this finding in his Objections. In a footnote he writes:

> For the record, the MJ is incorrect in stating that Tsai made no response to the Government's argument that the concurrent sentences with the lack of challenge to Count 3 means there is no prejudice from Conners' performance. (R & R, at Page ID # 1815 "In his Reply, Tsai makes no response to this argument and it is persuasive to the Magistrate Judge."). In fact, on page 13 of his Reply brief, Tsai argued that his "failure to address the Synvisc issue in his Motion to Vacate does not mean that he would have pleaded guilty had he been properly defended. The Synvisc charge was the least of his worries and resulted in an advisory guideline base offense level of 4."). (Reply, Page ID # 1782).

(Objections, ECF No. 146, PageID 1820, note 3.) The Court has examined the Reply and finds no discussion of the concurrent sentencing argument or attempt to distinguish the *Dale* case. Tsai's Objection to the Magistrate Judge's statement that he made no response to the concurrent sentencing argument is OVERRULED. The illegal importation charge was indeed less serious than the health care fraud charges, but the Objections again do not claim ineffective assistance of trial counsel for advising a plea of guilty to that charge or suggest any evidence which could have been offered in defense.

Tsai now responds to the concurrent sentence argument by claiming that his maximum sentence on Count Three standing alone would have been six months' imprisonment and that he only received a 78-month sentence on Count Three "pursuant to the direction of U.S.S.G. 5G1.2(b)(Sentencing on Multiple Counts of Conviction) which requires that the 78 months imposed on Ct. 1 also be imposed on Ct. 3." This argument is made nowhere in the Motion or the Reply.

The PSR, which was adopted without objections[5], shows at ¶¶ 61-64 an adjusted offense level of 28 for Count 1 and 4 for Count 3 with the Count 1 level obviously being higher. After adjustment decrease for acceptance of responsibility, the total offense level was calculated at 26. *Id.* at ¶¶ 66-67. The PSR also shows a maximum term of imprisonment of ten years on Count 1 and twenty years on Count 3. *Id.* at ¶ 99. The PSR also reports that "¶ 102 Pursuant to U.S.S.G. § 5G1.2(c), if the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentence on all counts shall run concurrently, except to the extent otherwise required by law."

In imposing sentence in this case, the Court expressly found that the maximum penalty on Count 3 was twenty years imprisonment (Sentencing Transcript, ECF No. 118, PageID 835). After determining that there was no objection to the guideline sentencing range calculation, the Court proceeded to explain its consideration of the factors in 18 U.S.C. § 3553(a):

> In addition to the sentencing guidelines, the Court has considered each of the factors listed in 18 U.S.C. Section 3553(a) regarding the imposition of the defendant's sentence.
>
> A total sentence of 70 months' imprisonment, followed by three years of supervised release, was recommended by the probation department. The defendant was the practicing physician at and owner of Advanced Family Medical Center from 2004 until 2013. He also had a financial interest in Watkins-Tsai Imaging Center from at least 2008 through 2012. During his tenure, the business engaged in a conspiracy to commit health care fraud. The defendant ordered a large amount of CT scans and gave doses of Synvisc and piriformis injections that were a danger to his patients.
>
> Under the direction of the defendant, the business billed for procedures that were never performed or overbilled for procedures. The behavior caused a financial loss to Medicare and Medicaid

---

[5] (Tr., ECF No. 118, PageID 835).

totaling $2,048,255.25, 100,000 of which was repaid through a civil settlement.

It is also concerning that the defendant ordered Synvisc and piriformis injections from overseas distributors, which were mislabeled and illegal for use in the United States. The labels for the product were often written in French and Turkish, language in which the defendant is not fluent.

At any given time the defendant could have placed a patient at risk by injecting the patient with an incorrect dosage or drug. In addition, he gave patients unnecessary and duplicative diagnostic scans, which put the health of the patients in jeopardy by giving them unneeded and excess radiation.

The defendant appeared to have more interest in the financial outcome of the business rather than the health of his patients.

The defendant is a naturalized citizen of the United States. He has achieved the education of medical doctor and saw his Ohio medical license revoked in 2013.

The defendant has continued his education since he moved to Arizona and hopes to practice a different form of medicine in the future. He was raised in a home absent of any abuse or
neglect and is very proud of his education, intelligence, and academic achievements.

Given all this information, it is discouraging that a health care professional engaged in a conspiracy that defrauded the Medicare and Medicaid health care system.

The defendant does not use drugs and consumes alcohol on a limited basis. He appears to have a significant amount of funds available to assist in the payment of restitution. He's not in need of any educational or employment readiness training that the government can provide.

There is one more consideration that the Court has taken into account, and that is that the sentencing guideline calculation only

accounts for the financial aspect of the health care fraud. The
guidelines would be the same for the defendant if he engaged in
fraudulent billing with appropriate patient care, but this case was
much more than fraudulent billing. It involved a large number of
unnecessary CAT scans, which provide a large amount of radiation
and endangered the health of many of his patients.

In addition, there were a number of medical professionals who
worked for the practice, nurses who warned Dr. Tsai of the
dangerousness of what he was doing, and he ignored all of those
complaints.

Based on the available information, the probation department, as I
said, recommended a sentence of 70 months. They also
recommended a three-year term of supervised release so that the
probation officer can assist with reintegration back into the
community after an absence and with the payment of restitution.

And the purpose of the sentencing is what is contained in 18
U.S.C. Section 3553(a), which is to consider the available
sentences and consider the nature and circumstances of the offense,
the defendant's criminal history, the seriousness of the offense,
promote respect for the law, and provide just punishment. And also
comply with 3553(a)(2) by serving as a deterrent and protecting
the community.

The sentence should avoid unwarranted disparities among
defendants who commit similar offenses and have similar
backgrounds. 3553(a)(7) applies because restitution is due.

And finally, the Court's sentence should be sufficient but not
greater than necessary to satisfy the statutory purposes of
sentencing.

(Sentencing Tr., ECF No. 118, PageID 838-41.) The Court then established that there was an agreed sentencing range under Fed. R. Crim.P. 11(c)(1)(B) of sixty-three to seventy-eight months. *Id.* at PageID 841-42. The Court then heard extensive statements from persons on both sides of the case, including an allocution from the Defendant. The statement by the

11

Government's counsel emphasized the harm and potential harm to patients associated with the conduct charged in Count 3.

When the Court came to finally imposing a sentence, it stated regarding the need for a sentence that would deter, "this was as egregious a case as I've ever seen where a doctor violated the first thing that doctors are supposed to do: cause no harm. This doctor caused harm to people." *Id.* at PageID 874. Thus the Court found that a sentence at the top of the guideline range on Count 3 "was adequate to achieve the total punishment" required by federal sentencing law. Whether Count 3 was the "least of [Defendant's] worries,[6]" the harm to patients associated with the conduct charged in that Count was paramount in the Court's consideration in imposing sentence. If Tsai were granted relief on Count 1, he would still be subject to sentencing on Count 3 where the maximum penalty is twenty years' imprisonment, more than three times the sentence imposed. The notion that, if he were only being sentenced on Count 3, Tsai would receive a probationary sentence is purely speculative and wishful thinking at best.

As noted above, the Government's concurrent sentence argument relied on *Dale v. Haeberlin*, 878 F.2d 930, fn. 3 (6th Cir. 1989)), where the Sixth Circuit adopted the "concurrent sentencing doctrine" that an appellate court may decline, even on direct appeal, to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction.

Tsai does not discuss the *Dale* case in either his Objections or his Motion for Certificate of Appealability[7]. Instead, he argues "[i]f this Court finds that Tsai's plea was not knowing and voluntary, then both of his convictions on Counts 1 and 3 must be vacated, not just his conviction on Count 1." (Objections, ECF No. 146, PageID 1818). This argument elides the

---

[6] Reply, ECF No. 144, PageID 1782, quoted as Objections, ECF No. 146, PageID 1820, n.3)
[7] Tsai also does not discuss the other authority for the concurrent sentencing doctrine cites by the Government as ECF No. 150, PageID 1832-33.

12

point that Tsai has not claimed his plea on Count 3 was based on failure of his trial attorney to be prepared on that Count. Instead, all of his argument is directed to counsel's alleged failure to be prepared on Count 1 and the consequent bad advice to plead guilty on that Count.

Finally, recent precedent undermines Tsai's claim that he would have insisted on completing the trial but for his attorney's bad advice. In *Lee v. United States,* 137 S. Ct. 1958 (2017), the Court reaffirmed the principle from *Hill v. Lockhart,* 474 U.S. 52 (1985), that a defendant seeking to prove ineffective assistance of trial counsel from acceptance of a plea agreement must "demonstrate a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" 137 S. Ct. 1965, quoting *Hill* at 59. The Supreme Court found that Lee had produced contemporaneous "substantial and uncontroverted" evidence that he would have proceeded to trial except for the bad advice from his attorney about deportation consequences. Nevertheless it cautioned, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." 137 S. Ct. at 1967.

As the Magistrate Judge's Report notes, Tsai made no contemporaneous claim about the asserted ineffective assistance of trial counsel. He never sought to change counsel or to withdraw his guilty plea, even though sentencing occurred ten months after the plea (Report, ECF No. 145, PageID 1810). Nor did he make any such claim on appeal or for fifteen months after the Sixth Circuit affirmed the conviction. Indeed, if Tsai's claim had been any more *post hoc,* it would have been barred by the statute of limitations.[8]

---

[8] The AEDPA imposes a one-year statute of limitations on § 2255 motions. The Sixth Circuit affirmed on June 7, 2016, the time for filing a petition for certiorari expired ninety days later, and the statute would therefore have run on September 5, 2017. The Motion here was filed on September 4, 2017.

13

Because the Rules Governing § 2255 Proceedings require the Court to decide whether to issue a certificate of appealability when it enters a final decision adverse to the movant, the Magistrate Judge ordered Tsai to file a motion for that relief and he has done so (ECF No. 147). The Court, however, finds the Motion unpersuasive.

To obtain a certificate of appealability, a petitioner must show at least that "jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). That is, it must find that reasonable jurists would find the district court's assessment of the petitioner's constitutional claims debatable or wrong or that they warrant encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 705 (2004); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017). In his Objections and Motion for Certificate of Appealability, Tsai has cited no authority – no reasonable jurist – who would find the concurrent sentencing doctrine inapplicable to a case such as this.

**Conclusion**

The Magistrate Judge's recommendation to dismiss the § 2255 Motion with prejudice is ADOPTED and the Clerk will enter judgment accordingly. Defendant's Motion for Certificate of Appealability is DENIED.

~~April~~ May 4, 2018.

Susan J. Dlott
United States District Judge